JAMES GRUBB AND HENRY POSTEN v. C. B. TROY AND J. C. PURVIS.

No. 337.

1. IMMATERIAL ERROR—*Exclusion of Testimony—Cured by Findings.* An error of the trial court in excluding competent testimony is immaterial where the court finds the fact to exist which the offered testimony tended to prove.

2. CONSTRUCTION OF CONTRACT—*Debtor and Creditor—Agreement to Hire.* Where the sureties for an insolvent debtor, for the purpose of enabling the latter to pay his obligations, agree to furnish the debtor with sums of money sufficient to pay the rent on a tract of land, pay all expenses of planting, cultivating, and raising a crop of corn, the living expenses of the debtor and his family, and all the debtor's necessary hired labor while raising the crop—the crop, by agreement, to be the property of the sureties, and they to pay the debtor for his services 17½ cents a bushel in the field for all the corn raised, the payments to be made, first, by deducting the amounts advanced for expense by the sureties, second, the balance then remaining to be applied in payment of the notes for which the sureties are liable, and third, any surplus then remaining to be paid to the debtor, *held*, that such agreement is a contract of hire.

Error from Brown district court; R. M. EMERY, judge. Opinion filed May 4, 1898. Reversed.

*Ryan & Stuart*, and *Hayden & Hayden*, for plaintiffs in error.

*Means & Smith*, for defendants in error.

The opinion of the court was delivered by

McELROY, J. : This action was brought by Grubb and Posten to restrain the defendants, as constable and deputy constable, from selling a crop of corn consisting of about 320 acres, levied upon under certain executions issued upon judgments against one Samuel V. Posten. When the action was commenced a temporary injunction was granted. At the conclusion of the trial, the court made special findings of fact and conclusions of law, and rendered judgment that the temporary injunction theretofore granted be dissolved and set aside, that plaintiffs take nothing by reason of their action, and that defendants recover their costs. The plaintiffs excepted, and present the case to this court for review.

They urge, first, that the court erred in sustaining an objection to a question asked of Henry Posten, as follows : " Ques. Now, in entering into this agreement, or any of these agreements, or in any of these transactions which you have mentioned here, was there any intention on your part to cheat, wrong or defraud any of the creditors of Samuel V. Posten ? " The action of the court in excluding this testimony as to the intention of Posten in making the contract in question is immaterial. The court found that the verbal contract in question was made in good faith and without any intention of defrauding creditors.

The trial was by the court, and the court found the fact to exist which the offered testimony tended to prove; therefore the plaintiffs could not have been prejudiced by the exclusion of the testimony.

The plaintiffs in error contend, second, that upon the facts found by the court judgment should have been rendered for plaintiffs. The trial court found:

"1. On March 1, 1894, plaintiffs were liable as sureties for one Samuel V. Posten, who was a brother of the plaintiff Henry Posten, and a brother-in-law of the plaintiff James Grubb, on divers and sundry promissory notes, which are particularly described in the copy of the contract attached to the petition of the plaintiffs and marked 'Exhibit A.'

"2. That on said date, and for a long time prior thereto, valid judgments in favor of numerous creditors against the said Samuel V. Posten remained unsatisfied in the justice's court of the city of Horton, Brown county, Kansas, more particularly described and set out in the answer of defendants herein, filed December 23, 1894.

"3. That on said date Samuel V. Posten held a long-time lease upon 400 acres of land, included in the Kickapoo Indian reservation, in Brown county, Kansas, which he had been cultivating prior to that time, and that said lease had several years yet to run, on payment of an annual rental therefor.

"4. That on said date Samuel V. Posten was the owner of about eighteen head of horses of mature age, five set of double harness, three wagons, two wheat drills, six cultivators, thirty stock hogs, and other property. That this or like property had been mortgaged to the plaintiffs to secure the payment of the indebtedness referred to in finding No. 1, or the original debts of which these notes were renewals, together with an additional indebtedness of $2000 renewed from time to time, on which plaintiffs were security for several years. That no effort had been made on the part of the plaintiffs to realize on the mortgage, and that such property was so under mortgage to the plaintiff on

March 1, 1894, and until after the levy made on the crop, hereinafter described; but such property was at no time sufficient to pay such indebtedness, and said Samuel V. Posten was insolvent.

"5. That prior to said March 1, 1894, the said plaintiff James Grubb had advanced to the said Samuel V. Posten the sum of $219 to pay rent of said lands for the year 1894, and in the latter part of· March, 1894, advanced the further sum of $171 to pay rent for 1894.

"6. That on said March 1, 1894, the plaintiffs entered into a verbal contract with the said Samuel V. Posten, whereby it was agreed that the said Samuel V. Posten should put in 400 acres of corn on the land aforesaid; that plaintiffs were to furnish all the money necessary for the planting and cultivating of such corn, guarantee his store bill for the season, pay the rents on the land so far as the said Samuel V. Posten was not able, and take the corn in the field at 17½ cents per bushel; and that out of such amount was to be deducted the money that had been paid out by plaintiffs to plant the corn, for hired help, blacksmith bill, expenses, the rents advanced, and the store bill guaranteed, and, if there was anything left, then it was to be applied on the notes mentioned in finding No. 1; the balance, if any, to revert to the said Samuel V. Posten. That said Samuel V. Posten was to till the ground in good workmanlike manner, and the crop, after it was planted, should be the property of the plaintiffs.

"7. That in pursuance of said agreement said Samuel V. Posten proceeded to prepare and plant said lands in corn, and finished planting the same about the — day of May, 1894. That owing to the unfavorable season there was not sufficient corn raised on said lands to pay the moneys advanced by the said plaintiffs under the contract.

"8. That plaintiffs guaranteed store bills of the said Samuel V. Posten to the amount of $545, and furnished money to pay the hands that worked in raising said corn, and all expenses connected with the

planting and raising of said corn, to the aggregate amount of about $1363.

"9. That the said Samuel V. Posten also owned lands, which he occupied as a homestead, adjoining the said 400 acres, on which he raised a crop of corn and on which the hired help paid for by the plaintiffs worked, and that no account was kept of the time such hired help worked on the farm of the said Samuel V. Posten, nor was the same kept separate from the work which was done by such help on the 400 acres.

"10. That the said Samuel V. Posten did pay a portion of the hired help by trading them ponies for their work, the exact amount in value not being disclosed by the evidence.

"11. That on the 8th day of May, 1894, executions were issued on the judgments referred to in finding No. 2, and levied by the defendant, as constable of the city of Horton, as in the answer of the defendants set out and alleged. That at the time of such levy most of the corn was up and growing, but a portion of it had been planted only a few days, and none of it had been cultivated.

"12. That on the 9th day of May, 1894, after the levy of said executions, plaintiffs and Samuel V. Posten attempted to and did substantially reduce their said oral contract to writing, which was afterwards, on the 9th day of May, 1894, duly filed in the office of the register of deeds of Brown county, Kansas. A copy of said written contract is attached to plaintiff's petition as 'Exhibit A,' and is referred to and made a part of this finding.

"13. The court does further find that said verbal contract entered into on March 1, 1894, between the plaintiffs and Samuel V. Posten, was done in good faith and for the purpose of carrying out the terms of the contract then entered into, namely, to reimburse the plaintiffs for sums expended in planting and raising the crop, and to provide means for the payment of the obligations on which they stood as security; and was without any intention of defrauding other creditors."

The contract referred to in the twelfth finding of fact, so far as material to the proper understanding of the controversy, reads :

"WHEREAS, On the 1st day of March, 1894, for the purpose of indemnifying said parties of the second part and each of them, and saving them and each of them harmless from all loss, costs, damages and expense on account of having so signed said promissory notes as sureties for said party of the first part as aforesaid, as well as for the purpose of enabling said party of the first part to pay off and discharge said indebtedness in full, it was then mutually agreed in parol by and between the parties hereto that said parties of the second part should and would furnish to said party of the first part, from time to time, as the same might be needed, sums of money in amounts sufficient to pay all the expenses of planting, cultivating and raising a crop of corn during the season of 1894 upon the following-described premises, situate in the county of Brown and the state of Kansas, to wit : . . . including whatever amount of rent said party of the first part might be required to pay for said premises, his family living expenses, and expenses for labor in putting in and raising such crop, etc. . . . The said party of the first part has sold, and by these presents does hereby sell, convey, and confirm, unto said parties of the second part, their heirs and assigns, the said crop of corn."

The defendants in error contend that the legal effect of the contract was to create an executory agreement to raise a crop of corn and sell it when raised at an agreed price per bushel; that the agreement was intended to operate as a mortgage on personal property, and therefore was void as against creditors who had no notice thereof. This contention is not tenable. The findings as a whole present this state of facts : The sureties for an insolvent debtor, for the purpose of enabling the latter to pay his obligations, agree to furnish the debtor with sums of money sufficient to

pay the rent on a tract of land, pay all expenses of planting, cultivating and raising a crop of corn, the living expenses of the debtor and his family, and all the debtor's necessary hired labor while raising the crop, the crop to be by agreement the property of the sureties, and they to pay the debtor for his services 17½ cents per bushel in the field for all the corn raised; the payment to be made, first, by deducting the amount advanced for expense by the sureties; second, by applying the balance then remaining to the payment of the notes for which the sureties were liable; third, by paying to the debtor any surplus then remaining. In substance, this is an agreement on the part of the debtor that he raise a crop of corn for 17½ cents per bushel, and that his wages be applied in payment of his indebtedness to such creditors so far as necessary to discharge that obligation. This, in effect, is an agreement to work for his creditor and apply the wages in discharge of his indebtedness to the employer. The agreement is that the crop, after it is planted, shall be the property of the plaintiffs.

We think the proper construction of the whole agreement is that it amounted to a contract of hiring, whereby Samuel V. Posten agreed to raise the crop for plaintiffs at the price of 17½ cents per bushel, to be paid in the manner therein provided. The stipulation that the crop was to be the property of the plaintiffs from the time of planting is entirely consistent with the theory that the whole transaction was a contract of hire. Upon the facts found by the court, decree should have been rendered for the plaintiffs, and against the defendants, enjoining the sale of the property.

The judgment must be reversed, and the cause remanded with direction to the trial court to make the injunction perpetual.